## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| FIONA WILLINGHAM, individually and as Wrongful Death Representative of Richard Lee Willingham, Jr.; RICHARD WILLINGHAM, III, individually and as Wrongful Death Representative of Richard Lee Willingham, Jr.; MARQUEE WILLINGHAM, individually and as Wrongful Death Representative of Richard Lee Willingham, Jr.; CAMERON WILLINGHAM, individually and as Wrongful Death Representative of Richard Lee Willingham, Jr.; and TEVIN ODOM, individually and as Wrongful Death Representative of Richard Lee Willingham, Jr., | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983, AND TENNESSEE COMMON LAW**<br><br><br>**JURY TRIAL DEMANDED PURSUANT TO FED. R. CIV. PRO. 38(a) & (b)** |
| PLAINTIFFS, | |
| v. | |
| SHELBY COUNTY, TENNESSEE, a Tennessee municipality; WELLPATH, LLC, a Delaware Limited Liability Company; Kadeja Gray, RN, Donna Randolph, M.D. and Oscar D. Webb, M.D.; WELLPATH, LLC Employees. | |
| DEFENDANTS. | |

## COMPLAINT

TO THE HONORABLE DISTRICT COURT JUDGE:

Plaintiffs Fionna Willingham, Richard Willingham III, Marquee Willingham, Cameron Willingham, Tevin Odom (collectively "Plaintiffs"), individually and as Next of Kin for Richard Willingham, Jr. (hereinafter the "Deceased"), by and through their designated attorneys, for their Complaint alleges as follows:

# I.

## NATURE OF THE ACTION

1.      This suit is brought under the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 ("Section 1983") and 1988 and Tennessee common law to remedy Defendants' actions in causing the Deceased to be deprived of his constitutional rights by subjecting him to unlawful treatment during his incarceration at the Shelby County Jail (hereinafter the "Jail"), during which time Defendants acted with deliberate indifference when they deprived him of basic, necessary, and immediate medical care for an acute pulmonary embolism, despite being put on notice of that condition by the Deceased. The Deceased suffered physical and emotional harm due to the Defendants' inhumane and deliberately indifferent actions. This failure to provide care for a serious medical condition ultimately resulted in the death of the Deceased. The Defendants five adult children now bring suit.

# II.

## SUBJECT MATTER JURISDICTION AND VENUE

2.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a) on the grounds that the claims asserted herein arise under Section 1983 and Section 1988. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367(a) in that the federal claims substantially predominate over state law claims and the claims are so related that they form part of the same case or controversy.

3.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a), (b) and (c) on the grounds that all or a substantial portion of the acts giving rise to the violations alleged herein occurred in this judicial district.

## III.

## THE PARTIES AND PERSONAL JURISDICTION

4.      Plaintiff Fionna Willingham (hereinafter "Plaintiff Fionna") is a resident of Sangamon County, Illinois. She is an adult, the eldest child, and only daughter of the Deceased. She is the mother of four (4) of the Deceased's grandchildren.

5.      Plaintiff Richard Willingham III is a resident of St. Louis County, Missouri. He is an adult, second eldest child, and eldest son of the Deceased. He is the father of one (1) of the Deceased's grandchildren.

6.      Plaintiff Marquee Willingham is a resident of St. Louis County, Missouri. He is an adult and the middle child of the Deceased.

7.      Plaintiff Cameron Willingham is a resident of Shelby County, Tennessee. He is an adult and the second to youngest child of the Deceased.

8.      Plaintiff Tevon Odom a resident of Shelby County, Tennessee. He is an adult and the youngest child of the Deceased. He is the father of one (1) of the Deceased's grandchildren.

9.      Defendant Shelby County, Tennessee (hereinafter "Defendant Shelby County" or "the County") is a Tennessee municipality liable for its policies, customs, and practices, is a party defendant to this matter.  Service upon Defendant Shelby County is perfected by service upon the County Attorney, Marlinee Iverson, at 160 N. Main St., 9th Floor, Memphis, Tennessee 38103.

10.      Defendant WellPath, LLC, formerly known as Correct Care Solutions, LLC., (hereinafter "Defendant WellPath" or "WellPath") is a limited liability company organized under the laws of the State of Delaware authorized to do business in Tennessee, with its principal place of business located at 1283 Murfreesboro Pike, Suite 500, Nashville, Tennessee 37217. Service of process may be made by serving its registered agent, Corporate Creations Network, Inc. at 205

Powell Place, Brentwood, Tennessee 37027. WellPath is a private entity hired by Shelby County, Tennessee to provide healthcare services at the Jail. At all times relevant to this Complaint, Defendant WellPath had an obligation to provide appropriate medical care to the Deceased when he was incarcerated at the Jail, or any other place Defendant WellPath treated or had an obligation to treat him, and to arrange for him to be evaluated by medical staff (on-site or off-site, as appropriate) when necessary. Defendant WellPath was responsible for the continuity of care received or not received by the Deceased throughout his custody at the Jail. Defendant WellPath is vicariously liable for the acts or omissions of the individuals responsible for providing care to the Deceased at the Jail and any and all agents (actual or apparent) who were negligent in the care/treatment they provided the Deceased. WellPath is also responsible for the violation of the Deceased's rights under the Fourteenth Amendment to the United States Constitution as a result of its policies or customs. Plaintiffs alleges that all agents of Defendant WellPath including but not limited to nurse practitioners, nurses, technicians, staff and any and all other health care providers who treated or should have treated and failed to treat the Deceased or who were in any way involved in the Deceased's care or the failure to provide adequate care at the Jail were acting in the course and scope of their agency and/or employment with WellPath at all times relevant to this action. By way of alternative pleading, and upon information and belief, all of the nurse practitioners, nurses, technicians, staff, and other health care providers who cared for or treated or should have treated and failed to adequately treat the Deceased during all times relevant to this claim were apparent agents of WellPath. Upon further information and belief, WellPath knowingly permitted the healthcare providers to hold themselves out as agents of WellPath and/or WellPath held out the healthcare providers as agents and the Deceased reasonably believed they were agents of WellPath and relied upon that belief. Moreover, WellPath was responsible for developing and

implementing policies, protocols, procedures and systems for the purpose of providing individuals at the Jail with reasonable and safe care and with ensuring that the rights of inmates under the 14th Amendments to the United States Constitution were protected at all times relevant to this claim and failed to do so with regard to the Deceased. At all times relevant to this Complaint, WellPath acted under color of law, performed government functions, was entwined in a symbiotic relationship with Shelby County, and was otherwise engaged in state action consistent with the Supreme Court's analysis in Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n, 531 U.S. 288 (2000). WellPath is a "person" within the meaning of 42 U.S.C. § 1983.

11.    Defendant Donna Randolph, M.D. (hereinafter "Dr. Randolph") is the Medical Director for the Jail and is an employee of WellPath. Upon information and belief, Dr. Randolph is the final decision maker regarding medical decisions and policies or procedures at the Jail. She is being sued in her individual capacity. Service of process may be made upon Defendant, Donna Randolph, M.D. at 626 Charleston Court, Memphis, Tennessee 38103

12.    Defendant Oscar D. Webb, M.D. (hereinafter "Dr. Webb") is a WellPath physician that was responsible for the treatment and care to the Deceased while at the Jail. Service of process may be made upon Defendant, Oscar D. Webb, M.D. at 570 N. Walnut Bend Road, Cordova, Tennessee 38018.

13.    Defendant Kadeja Gray, RN ("Defendant Gray"), is a WellPath nurse and employee. Defendant Gray was responsible for the treatment and care to the Deceased while at the Jail. Service of process may be made upon Defendant, Kadeja Gray, RN at 835 Vincent Street, Clarksdale, Mississippi 38614.

14.    As used herein, the phrase "WellPath Defendants" refers to Dr. Randolph, Dr. Webb, and Defendant Gray, both collectively and individually.

15.     At all times relevant to this Complaint, WellPath Defendants acted under color of law, performed government functions, was entwined in a symbiotic relationship with Shelby County, and was otherwise engaged in state action consistent with the Supreme Court's analysis in Brentwood Acad. V. Tenn. Secondary Sch. Ath. Ass'n, 531 U.S. 288 (2000). WellPath Defendants are a "persons" within the meaning of 42 U.S.C. § 1983. At all times relevant to this Complaint WellPath Defendants engaged in actions as employees and agents of WellPath for which WellPath is vicariously liable. As employees of WellPath transacting business through WellPath, service of process may be made by serving WellPath's registered agent, Corporate Creations Network, Inc. at 205 Powell Place, Brentwood, Tennessee 37027 or by serving them at their place of employment, the Shelby County Jail.

16.     This Court has both general and specific personal jurisdiction over Defendants because each Defendant has had substantial and continuous contact with Tennessee.  As a result, this Court has personal jurisdiction over Defendant pursuant to TENN. CODE ANN. §§ 20-2-214(1) and (2) and (6) and 20-2-223(1), (3) and/or (4) on the grounds that the claims asserted against them arise from its transaction of business within Tennessee and on the grounds that the acts giving rise to this Complaint arose within Tennessee. Furthermore, Defendants' contacts and actions were directed toward Tennessee and thus warrant the exercise of personal jurisdiction over it pursuant to TENN. CODE ANN. § 20-2-225(2).

**IV.**

**FACTUAL ALLEGATIONS**

17.     The Deceased suffered from a history of Deep Vein Thrombosis and Pulmonary Embolisms, which he treated with blood thinners. For example, on April 23, 2020, the Deceased was admitted to Baptist Memorial Hospital (hereinafter "Baptist") for an acute pulmonary

embolism. (hereinafter "Baptist"). The Deceased remained at Baptist until his release on May 4, 2020. During this stay he had bilateral pulmonary arteriogram and thrombectomy.

18.     On June 30, 2020, the Deceased was detained and transported to the Jail where he was held in pretrial detention.

19.     As a result of the pandemic caused by the Novel Coronavirus ("COVID-19")s, , Shelby County and/or WellPath implemented a policy, practice, or custom of housing all inmates coming into the Jail in what they called "quarantine pods." Inmates were ostensibly placed in medical quarantine for twenty-one (21) days if they were asymptomatic and tested negative. Inmates were placed in medical isolation for twenty-one (21) days if they were a known positive patient. This practice, at least during the time relevant to this Complaint, was not reasonably calculated to manage the spread of COVID-19, as inmates were housed in pods, with open bars, and inadequate ventilation. What this practice did accomplish was to ensure that inmates were denied access to courts, counsel, and medical care.

20.     Shelby County and/or WellPath's policy, practice, or custom of isolating new inmates prevented the Deceased from even appearing via video arraignment on July 1, 2020 and July 7, 2020.

21.     Shelby County and/or WellPath's policy, practice, or custom of "isolating" new inmates prevented Nurse Ethel Eubanks from performing the Deceased's Medical History and Physical Assessment on July 2, 2020 as scheduled. Nurse Ethel Eubanks marked the Deceased as unavailable for the exam. Nurse f/n/u Love even drafted a refusal of treatment form for the Deceased stating fraudulently that he refused his fourteen (14) day physical exam but noted on Decedent's chart that the "refusal" was because the Deceased was in quarantine in LL-C-Pod.

22.     On July 13, 2020, at, or around 4:02 p.m. after being in quarantine for thirteen (13)

days without his blood thinners the Deceased was escorted to the clinic at the Jail experiencing chest pain, shortness of breath, and pain from blood clots.

23.    Wellpath and its nurses utilize a computerized decision tree model called Nurse Pathways to aid nurses in diagnosis and treatment.

24.    The Deceased's medical records, as notated by Defendant Gray, state that the Deceased's chief complaint was "I have not had my blood thinners… I didn't think I was going to be in jail this long."

25.    At 4:39 P.M. on July 13, 2020, Defendant Gray took the Deceased's vitals and recorded a Pulse Oximetry reading of 88% and a pulse rate of 106.

26.    Under subjective symptoms, Defendant Gray recorded "Chest Pain: Yes," "Cough: Yes," "SOB (shortness of breath): Yes,"

27.    The Deceased informed Defendant Gray of the following:

> PT reports having surgery last month to remove blood clots / embolisms from lung; PT reports having surgery on vein to LLE in 1997 after being shot/wounded; this is the source of blood clot formation; PT states "I can feel when the clots are forming because I have been dealing with them for a while." PT reports shortness of breath and mild chest pain.

28.    All of the above-described symptoms indicate that the Deceased was suffering from an acute pulmonary embolism.

29.    The Nurse Pathways chart notes that a pulse oximetry reading below 90% indicates "severe exacerbation" of a respiratory condition.

30.    The other symptoms listed above appear on the Nurse Pathways chart under "moderate exacerbation."

31.    The standard of care in a corrections facility or jail in a similar municipality would require that a patient suffering from multiple symptoms of a pulmonary embolism, especially a

patient with a history of Deep Vein Thrombosis and Pulmonary Embolism known to have gone unmedicated for thirteen (13) days, be placed on supplemental oxygen and transported to an emergency department.

32.     In the alternative, and at a minimum, the standard of care in a corrections facility or jail in a similar municipality would require that a patient suffering from a blood oxygen saturation level of 88% who had a history of pulmonary embolism be examined personally by a physician, nurse practitioner, or physician's assistant.

33.     As part of their response to the COVID-19 pandemic, Shelby County and/or WellPath implemented a policy, practice, or custom of providing only telemedicine for all physicians employed at the Jail. This policy was put in place by the jail's medical director, Dr. Randolph. As outlined further below, this policy was a direct and proximate cause of the Deceased's horrific death.

34.     In the alternative, and at a minimum, the standard of care in a corrections facility or jail in a similar municipality would require that a patient suffering from a blood oxygen saturation level of 88% who had a history of pulmonary embolism be kept in the infirmary for continued monitoring until symptoms improved or an alternative underlying cause was identified and treated.

35.     Despite these clear indications that Plaintiff was suffering an acute pulmonary embolism, Defendant Gray marked Plaintiff's complaint "routine."

36.     The Deceased chart indicates that Defendant Gray notified Dr. Webb who approved this treatment verbally. It is unclear from the chart whether Defendant Gray notified Dr. Webb before or after this *de minimis* treatment, but, in any event, Dr. Webb conducted no examination of the Decedent. In fact, he could not conduct such an examination because he was not even there.

37.    Defendant Gray notified the health care provider Dr. Webb via telephone of the serious medical condition the Deceased was presenting with in the clinic. Upon verbal orders Defendant Gray administered a single dose of Lovenox 120 mg subcutaneously to the Deceased. Defendant Gray as a registered nurse should have known of the Deceased's serious medical condition. Defendant Gray disregarded the Deceased's substantial risk of serious harm or death. Defendant Gray failed to immediately send the Deceased to Regional One Hospital for emergent care.

38.    Even if Defendant Gray had been justified in her decision not to seek emergent care or even examination by a physician for the Deceased, her own Nurse Pathways chart for "routine" care required her to "monitor SP02 and vitals until stable." Defendant Gray did not do this.

39.    Instead of being transported to Regional One Hospital for immediate and necessary life-saving emergent care or even remaining under Defendant Gray's care for monitoring of his symptoms, the Deceased was sent back to his quarantine pod without being examined by a physician at, or around 5:11 p.m. on July 13, 2020, with a follow up appointment in a week with Dr. Webb.

40.    The administration of a single subcutaneous dose of Lovenox is not treatment for a pulmonary embolism and amounted to no treatment at all.

41.    Defendants Gray and Webb made no effort to discern the cause of Decedent's 88% pulse oximetry reading even though it was staring them in the face.

42.    Both Defendants Gray and Webb bear responsibility for these deeply flawed decisions. Defendant Gray was the nurse on site with direct responsibility for her patient. She knew or should have known that the symptoms described above required immediate emergent medical care. On information and belief she is authorized to make the decision to transport a patient to

Regional One Hospital for treatment. Instead, she was deliberately indifferent to the Deceased's serious medical need.

43.     Likewise, Dr. Webb knew or should have known that the symptoms described above required immediate emergent medical care. On information and belief he is authorized to make the decision to transport a patient to Regional One Hospital for treatment. Instead, she was deliberately indifferent to the Deceased's serious medical need and both ratified and acquiesced in Defendant Gray's decision not to transport the Deceased for emergency treatment.

44.     On July 14, 2020, at, or around 9:18 a.m., the Deceased put a medical sick call request in through the medical kiosk which stated the following:

> Hi. My name is Mr. Richard Lee Willingham, Jr. I have a number of blood clots in my body. I just had a procedure done t [sic] Baptist East where they did an operation and removed blood clots out of my lungs. About two months ago. My request is to be moved to the 2nd floor so I can move around because, being still makes me dissy [sic] and I canot [sic] breathe, makes me feel like I am about to stroke or pass out. I am supposed to be on 10 millagrams [sic] twice a day. I will take any blood thinner. PLEASE HELP ME.

45.     Shortly thereafter, the Decedent appeared in court for the first time. At his initial appearance, he was appointed a public defender, whom he told about his medical condition. The public defender moved the Court to reduce the Decedent's bond for medical reasons. The general sessions judge did so. On information and belief, it was around this time that the Decedent began to cough blood, yet he was still not promptly transported to Regional One.

46.     The Decedent's lawyer attempted to arrange for bond to be posted so that he could go to the hospital of his own accord. Just City, a not-for-profit organization that operates a bail fund, agreed to post the Deceased's bail and actually did so, but by this time it was too late for the Deceased.

47.     Due to a near-total absence of medical records at this point, it is unclear precisely

what happened next, but hours passed between Mr. Willingham's court appearance and his arrival at Regional One.

48.     The only record of this period is an ER/IP Referral Form, which is the standard form that the Shelby County Jail uses to refer individuals to Regional One Hospital for treatment. This record is incomplete and unsigned, but it identifies the requesting provider as Dr. Webb. It reflects some limited vital signs, including a pulse of 140, a pulse oximetry reading of 78% that was raised to 84% upon administering supplemental oxygen.

49.     Though this document is supposed to reflect the time at which it was generated, the timestamp contains only the date, 7/14/2020. There is no provider signature, and the nurse signature line contains a typed "TToomer RN."

50.     The purpose of this document is to convey critical information to the emergency department medical staff, yet those sections of the form are left blank or describe the chief complaint as "shortness of breath," completely omitting the nature of the complaint.

51.     Despite these desperate pleas for immediate medical assistance for an extremely serious medical condition, the Deceased was not transported to Regional One Hospital until approximately 4:54, nearly twenty-five (25) hours after Defendants Gray and Webb were informed of the Deceased's extremely serious medical condition..

52.     The Deceased presented at Regional One's emergency department with severe difficulty breathing. Regional One Hospital listed the onset of breathing difficulties as being "12 hours ago," which was completely inaccurate and certainly the result of the failure to complete and transmit the ER/IP Referral Form.

53.      A differential diagnosis of Pulmonary Embolism was promptly identified and his attending physician immediately administered Heparin, a blood thinner.

54.     A Pulmonary CT Angiogram confirmed the differential diagnosis as follows:

1) Extensive bilateral pulmonary emboli. Near-complete occlusion of the right main pulmonary artery. Multiple smaller pulmonary emboli seen in the left upper and lower lobe and segmental branches;
2) Dilated right ventricle in collapse of the left ventricular which could represent right ventricular strain;
3) Patchy alveolar opacities left lung. Findings could be associated with atypical infection including viral or represent sequela of pulmonary emboli; and
4) Subsegmental atelectasis apical segment left upper lobe. Attention on follow-up imaging recommended.

55.     Ultimately, the Regional One team made the decision to perform a thrombectomy. Unfortunately, due to the advanced stage of the Deceased's condition, which was directly and proximately caused by WellPath Defendants' failures to immediately or even timely have the Deceased transported to Regional One, the Deceased expired during the surgery.

56.     Upon information and belief, Regional One Hospital later conducted a mortality review panel to review the Deceased's case. All physicians and staff were absolved of fault and it was determined that if the Deceased had arrived at the hospital earlier he would have been more likely than not to have survived.

57.     As a matter of policy, practice, and/or custom and at all times relevant to this Complaint, WellPath and/or Shelby County failed to afford pretrial detainees in person examination by a physician, regardless of severity of symptoms. WellPath and/or Shelby County adopted a policy of providing only telemedicine visits with physicians. This policy, practice, and/or custom is unconstitutional as applied as detainees and inmates are entitled to adequate medical care for their serious medical needs. WellPath and/or Shelby County cannot provide adequate medical care with a policy, practice, and/or custom of providing only telemedicine unless they also refer to outside providers whenever symptoms indicate referral to a healthcare provider.

58.     As a matter of policy, practice, and/or custom WellPath and/or Shelby County force

pre-trial detainees into a mandatory twenty-one (21) day quarantine or isolation and refuse to allow those pre-trial detainees to travel to court or outside medical. This policy is unconstitutional on its face and/or as applied because pre-trial detainees are entitled to access to the courts, counsel, and adequate medical care. WellPath and/or Shelby County cannot provide adequate medical care with a policy, practice, or custom that prevents pre-trail detainees from visiting outside medical or the court during quarantine or isolation.

59.     As a matter of policy, practice, and/or custom WellPath and/or Shelby County adopted a policy or practice of entering fraudulent refusal of treatment paperwork instead of conducting a history and physical examination of pretrial detainees. This policy, custom, or practice deprived pretrial detainees of access to medical care for serious medical needs and is a deviation from the standard of care for corrections and jail medical providers.

60.     WellPath's and/or Shelby County's medical treatment policies, practices, or customs cause widespread and systematic discontinuations and/or denials of prescribed or clinically indicated treatment to pre-trial detainees and inmates with serious medical conditions, leading to substantial injuries, damages, and even death to inmates.

61.     In the event that WellPath denies that it is responsible for any of the policies alleged herein, then Plaintiffs alleges, in the alternative, that the policy is attributable to Shelby County.

62.     It being clearly established that a pre-trial detainee has a substantive due process right to necessary medical care, any reasonable medical care provider who was not deliberately indifferent and who knew that a prisoner had an obvious and apparent Pulmonary Embolism evidenced by local pain, shortness of breath, chest pain, recent surgery for Pulmonary Embolism, and a history of Pulmonary Embolism, would have immediately sent the prisoner out for life saving emergent care.

63.    But for the deliberate indifference of the Defendants to the Deceased's serious medical needs he would never have had to endure days of excruciating pain as he slowly and painfully died.

64.    The Deceased and the Plaintiffs have suffered damages as a result of Defendants' deliberately indifferent conduct regarding the medical care of the Deceased while he was a pre-trial detainee at the Jail. As a direct and proximate result of Defendants failure to provide reasonable and necessary medical care to the Deceased, the Deceased endured days of excruciating pain as he slowly and painfully died.

65.    The Deceased's injuries are permanent and irreversible. Plaintiffs will suffer from the unnecessary and easily avoidable death of their father for the rest of their lives.

**V.**
**CAUSES OF ACTION**

**COUNT 1 – VIOLATION OF 42 U.S.C. § 1983 (AGAINST SHELBY COUNTY)**

66.    Plaintiffs re-alleges paragraphs 1-65 of this Complaint as if set forth verbatim herein.

67.    As alleged above the County acting under color of state law, violated the rights of the Deceased secured by the Fourteenth Amendment to the U.S. Constitution. Specifically, the Shelby County Sheriff, Shelby County Jail Director, Shelby County Assistant Director of Jail Programs, the Shelby County Jail Medical Director, and the various other officials responsible for making policy with regard to the Sheriff's Department and Jail enacted policies and customs that were deliberately indifferent to and caused the violation of the Deceased's constitutional rights.

68.    Further, Shelby County, acting by and through its policymakers, officers, and agents, and acting under color of state law, violated the rights of the Deceased secured by the Fourteenth Amendment to the U.S. Constitution.

69.     Defendant Shelby County, acting by and through its policymakers, officers, and agents with deliberate indifference, implemented customs and policies and/or at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the individuals who violated the above-described constitutional rights of the Deceased. These policies and customs directly and proximately caused the above-described constitutional rights violations.

70.     In the alternative, Defendant Shelby County, acting by and through its policymakers, officers, and agents with deliberate indifference, failed to properly hire or train its agents and employees with respect to their responsibilities in ensuring that they provide reasonable medical care, which proximately caused the above-described constitutional rights violations.

## COUNT 2 – VIOLATION OF 42 U.S.C. § 1983 (AGAINST WELLPATH)

71.     Plaintiffs re-alleges paragraphs 1-65 of this Complaint as if set forth verbatim herein.

72.     At all times relevant to this Complaint, the WellPath acted under color of law, performed government functions, was entwined in a symbiotic relationship with Shelby County, and were otherwise engaged in state action consistent with the Supreme Court's analysis in Brentwood Acad. V. Tenn. Secondary Sch. Ath. Ass'n, 531 U.S. 288 (2000). WellPath is a "person" within the meaning of 42 U.S.C. § 1983.

73.     WellPath directly participated in and proximately caused the above-described constitutional rights violations by instituting policies and customs with deliberate indifference to the serious medical needs of individuals like the Deceased, specifically including, but not limited to, WellPath's policies of utilizing telemedicine and refusing to examine inmates and pre-trial detainees in quarantine.

74.     To the extent that WellPath Defendants claim their subordinates are the actual persons who were deliberately indifferent to the serious medical needs of the Deceased and that they were not personally involved themselves, WellPath Defendants at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of these offending subordinates. As a result, WellPath Defendants are personally liable under Section 1983. *Taylor v. Michigan Dep't of Corrections*, 69 F.3d 76, 81 (6th Cir. 1995) ("At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate") quoting, *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1983).

75.     Defendant WellPath, acting by and through its policymakers, officers, and agents with deliberate indifference, implemented customs and policies and/or at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the individuals who violated the above-described constitutional rights of the Deceased. These policies and customs directly and proximately caused the above-described constitutional rights violations resulting in the Deceased's death.

76.     In the alternative, if Defendant WellPath claims that the conduct described herein is contrary to its policies, then WellPath, acting by and through its policymakers, officers, and agents and with deliberate indifference, failed to properly train or supervise its agents and employees with respect to their responsibilities in ensuring that they provide reasonable medical care, which proximately caused the above-described constitutional rights violations.

**COUNT 3 – VIOLATION OF 42 U.S.C. § 1983 (AGAINST WELLPATH DEFENDANTS)**

77.     Plaintiffs re-alleges paragraphs 1-65 of this Complaint as if set forth verbatim herein.

78.     At all times relevant to this Complaint, the WellPath Defendants acted under color of law, performed government functions, were entwined in a symbiotic relationship with Shelby County and were otherwise engaged in state action consistent with the Supreme Court's analysis in Brentwood Acad. V. Tenn. Secondary Sch. Ath. Ass'n, 531 U.S. 288 (2000). WellPath defendants are "persons" within the meaning of 42 U.S.C. § 1983.

79.     The WellPath Defendants, acting with deliberate indifference, directly participated in and proximately caused the above-described constitutional rights violations by deliberately ignoring the Deceased's serious medical needs.

80.     All of the WellPath Defendants provided treatment and care to the Deceased during his confinement at the Jail were responsible for providing and/or supervising the medical treatment of the Deceased.

81.     A layperson would be aware that Deep Vein Thrombosis is a serious condition that is treated with prescription medication and if untreated for extended periods of time require immediate emergent care. The WellPath Defendants knew or should have known (1) that because the Deceased had a history of Deep Vein Thrombosis and Pulmonary Embolisms, he suffered from a serious medical need, and (2) immediate emergent care was necessary given the Deceased's medical symptoms.

82.     A layperson would be aware that Pulmonary Embolism is a serious condition that requires immediate emergent care and that if left untreated is likely to result in death. The WellPath Defendants knew or should have known (1) that because the Deceased had a history of Deep Vein Thrombosis and Pulmonary Embolisms, he suffered from a serious medical need, and (2) immediate emergent care was necessary given the Deceased's medical symptoms.

83.     The WellPath Defendants knew or had reason to know that the Deceased had a

serious medical need that required immediate emergent treatment and that there was a risk that the Deceased would die if he did not receive immediate emergent treatment. The WellPath Defendants were informed of that risk by the Deceased. The WellPath Defendants inexcusably disregarded that risk by failing to immediately transport the Deceased to Regional One Hospital to ensure that Deceased received necessary lifesaving emergent care.

84.     The WellPath Defendants were subjectively aware of a serious risk to the Deceased and disregarded that risk by failing to take reasonable steps to abate it. The WellPath Defendants, acting recklessly and with deliberate indifference, chose to ignore the Deceased's serious medical needs and did not immediate transport him for necessary lifesaving emergent care that they were aware he required. The failure of the WellPath Defendants to properly examine or transport the Deceased to the Regional One Hospital in a timely manner was so woefully inadequate as to amount to no treatment at all.

85.     The WellPath Defendants' failure to provide necessary medical care resulted in the Deceased's excruciatingly painful and slow death.

**COUNT 4 – HEALTH CARE LIABILITY (AGAINST WELLPATH)**

86.     Plaintiffs re-alleges paragraphs 1-65 of this Complaint as if set forth verbatim herein.

87.     This Court has jurisdiction over the subject matter of this action as it arises under the Tennessee Healthcare Liability Act and the Common Law of the State of Tennessee.

88.     All acts complained of herein occurred in Shelby County, Tennessee. All acts occurred within one year of the date of filing and/or discovery, and in accordance with the statutory requirement found at Tenn. Code Ann. § 29-26-121(a).

89.     Plaintiffs complied with the notice requirements set forth in Tenn. Code Ann. § 29-

26-121, et seq., and mailed those letters via certified mail, return receipt requested, on November 6, 2020, which is evidenced by the attached Affidavit of Compliance.  The documentation required by Tenn. Code Ann. § 29-26-121 is attached hereto as **Exhibit A** and is incorporated herein by reference.

90.   Plaintiffs timely complied with the notice requirements of Tenn. Code Ann. § 29-26-121 by giving pre-suit notice to WellPath at least sixty (60) days before the Complaint was filed.

91.   Pursuant to Tenn. Code Ann. § 29-26-122, a certificate of good faith is being filed contemporaneously with this Complaint and is incorporated herein by reference and attached as **Exhibit B.**

92.   For purposes of liability pursuant to the Tennessee Healthcare Liability Act, Tenn. Code Ann. § 29-26-101 *et seq.* WellPath is vicariously liable for the acts of its agents and employees, including, but not limited to, the other WellPath Defendants.[1]

93.   "Corporations    may    be    subject    to    liability    under    the    Tennessee Medical Malpractice Act. Tenn. Code Ann. § 29-26-101(a)(2)(E)." Hargrow v. Shelby Cty., No. 13-2770, 2014 U.S. Dist. LEXIS 108917, at *18 (W.D. Tenn. Aug. 7, 2014).  Limited liability companies that are health care providers are subject to medical malpractice suits. Id.

94.   WellPath is a limited liability company that provided medical services to the Shelby County Criminal Justice Center and more specifically provided medical treatment to the Deceased. WellPath is a health care provider under § 29-26-101(a)(1) and may be sued for medical malpractice under Hargrow.

---

[1] Plaintiff brings suit against only WellPath for healthcare liability. The other WellPath Defendants are named only as defendants pursuant to 42 U.S.C. § 1983.

95.     At all times relevant to this Complaint, WellPath owed the Deceased a duty of care to provide medical care that met the standard of care in Shelby County, Tennessee and to arrange for him to be evaluated by medical staff (on-site or off-site, as appropriate) when necessary. WellPath was responsible for the continuity of care received or not received by the Deceased.

96.     WellPath, through its agents including the WellPath Defendants, owed a duty to its patients, including the Deceased, to provide care, treatment and services as reasonably prudent healthcare providers under same or similar circumstances, including proper evaluation, diagnosis and care of patients like the Deceased.  Further WellPath had a duty to provide treatment within the applicable standard of care of this or a similar community and take all reasonable steps to ensure that its staff where it was treating patients delivered care and services to patients in accordance with WellPath's orders, care plan interventions, and policies.

97.     WellPath's agents breached the duty of care in ways that include but are not limited to the following:

   a)  failed to properly evaluate, diagnose, treat and monitor Plaintiff's condition;

   b)  failed to implement and provide an appropriate treatment plan;

   c)  failed to ensure that Plaintiff was provided access to proper treatment when the Deceased was placed in quarantine; and

   d)  unreasonably delayed Plaintiff's transport to a fully-equipped emergency medical facility.

98.     WellPath breached its duty owed to the Deceased and failed to provide treatment within the applicable standard of care of this or a similar community by not providing proper evaluation, diagnosis and treatment and further failing to take all reasonable steps to ensure the staff and nurses delivered care and services to patients in accordance with WellPath's orders, care plan interventions, and  policies, and these breaches were the direct and proximate cause of the

damages, and injuries suffered by the Deceased described herein.

99.    WellPath breached its duty owed to the Deceased and failed to provide treatment within the applicable standard of care of this or a similar community by not providing proper evaluation, diagnosis and treatment and further failing to take all reasonable steps to ensure the staff and nurses delivered care and services to patients in accordance with WellPath's orders, care plan interventions, and  policies, and these breaches were the direct and proximate cause of the damages, and injuries suffered by the Deceased described herein.

100.    WellPath owed a duty to patients, including the Deceased, to hire, train and supervise its nurses and staff to ensure said nurses and staff delivered care and services to patients in accordance with physician orders, care plan interventions, and its policies with appropriate timing and technique in the performance of orders. WellPath further owed a duty to patients, including the Deceased, to appropriately credential, evaluate, employ and supervise its nurses and staff.

101.    WellPath breached its duty to the Deceased by failing to hire, train and supervise its nurses and staff to ensure said nurses and staff delivered care and services to patients in accordance with physician orders, care plan interventions, and its policies with appropriate timing and technique in the performance of orders.  WellPath further recklessly failed to provide the Deceased nurses and staff appropriately credentialed, evaluated, employed and supervised.  WellPath was aware of the defects in the credentialing and qualifications of its nurses and staff and was aware that such defects posed a substantial and unjustifiable risk to patients including the Deceased, but consciously disregarded such defects and risks.  All of those breaches, acts and omissions were the direct and proximate cause of the damages and injuries suffered by the Deceased described herein.

102.     These deviations from the standard care resulted in liability for WellPath under the Tennessee Healthcare Liability Act and are the direct and proximate cause of the Deceased's previously-described physical injuries, pain, suffering, emotional distress, and ultimately his death.

### COUNT 5 – WRONGFUL DEATH AND LOSS OF CONSORTIUM AGAISNT WELLPATH AND WELLPATH DEFENDANTS

103.     Plaintiffs incorporate Paragraphs 1-65 and 86-102 as if set forth verbatim herein.

104.     Tennessee's Wrongful Death statute set forth at Tenn. Code Ann. § 20-5-13 permits surviving children of a decedent to recover not merely the damages that belonged to the Decedent through right of survival but also incidental damages in their own right including the pecuniary value of the Decedent's life including loss of consortium damages.

105.     The Deceased was gainfully employed and anticipated many years of continued employment, and Plaintiffs enjoyed a close and loving relationship with the Deceased sufficient to justify an award of damages for loss of parental consortium.

106.     The acts and omissions set forth herein above were the direct and proximate cause of the Deceased's death and afford Plaintiffs individual causes of action for incidental damages including, but not limited to, the pecuniary value of the Decedent's life and loss of consortium in an amount to be shown to the Court.


### VII.
### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demands judgment against Defendants on each Count of the Complaint and prays for the following relief:

1.     Issue service of process and serve the Defendants;

2.     Permit Plaintiffs leave to amend this Complaint after reasonable discovery;

3.     Empanel a jury to try this matter;

4.     Award Plaintiffs compensatory damages

5.     Award Plaintiffs punitive damages;;

6.     Award Plaintiffs their reasonable attorney's fees and expenses, pursuant to 42 U.S.C. § 1988;

7.     Award costs and expenses incurred in this action pursuant to Rule 54 of the Federal Rules of Civil Procedure;

8.     Award pre-and post-judgment interest pursuant to TENN. CODE ANN. § 47-14-123 in an amount according to the proof at trial; and

9.     Grant the Plaintiff such further relief as the Court may deem just and proper.

Respectfully submitted,

/s/ *Brice M. Timmons*
Brice M. Timmons (#29582)
Craig A. Edgington (#38205)
DONATI LAW, PLLC
1545 Union Avenue
Memphis, TN  38104
(901) 278-1004 (Office)
(901) 278-3111 ( Fax)
brice@donatilaw.com
craig@donatilaw.com